UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

BABATUNDE KAREEM AGORO,

           Petitioner,

    - against -

THE DISTRICT DIRECTOR FOR
IMMIGRATION CUSTOM
ENFORCEMENT; THE DEPARTMENT
OF HOMELAND SECURITY;
ATTORNEY GENERAL OF THE
UNITED STATES,

           Respondents.

------------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 8111 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On September 23, 2009, Babatunde Kareem Agoro filed this petition for a writ of habeas corpus ("Petition") pursuant to section 2241 of title 28 of the United States Code.[1] Agoro challenges his detention at the Varick Federal Detention Facility in New York by the United States Bureau of Immigration and

---

[1] Agoro filed his Petition *pro se*. Agoro subsequently obtained counsel who filed Agoro's Memorandum of Law in Reply to the Government's Opposition to Babatunde Kareem Agoro's Petition for a Writ of Habeas Corpus ("Reply Mem.").

1

Customs Enforcement ("ICE"), a division within the Department of Homeland Security ("DHS"). Respondents, District Director for Immigration Custom Enforcement, DHS, and Eric H. Holder, Jr., Attorney General of the United States (collectively, the "Government"), oppose Agoro's petition. For the reasons discussed below, Agoro's petition for a writ of habeas corpus is denied.

## II. BACKGROUND[2]

Agoro is a citizen of Nigeria.[3] Agoro came to the United States on or about January 5, 1980 and, became a lawful permanent resident on December 1, 1983.[4] Agoro was convicted of credit card fraud in the District of Rhode Island.[5] Agoro was scheduled to be sentenced on May 1, 1991, however, he failed to appear for the sentencing.[6] Agoro was ultimately sentenced on April 1, 1992, to

---

[2] Because Agoro does not submit a complete version of the background relating to his Petition, this section is primarily based on the Government's Letter Brief in Opposition to the Petition ("Opp. Mem.").

[3] *See* Petition for a Writ of Habeas Corpus ("Pet.") at 39; United States Department of Justice Order to Show Cause and Notice of Hearing ("OTSC"), Ex. A to Opp. Mem.

[4] *See* Pet. at 39; OTSC.

[5] *See* CR: 90-102B Judgment and Commitment, Ex. A to Reply Mem.

[6] *See* CR: 91-74L Judgment and Commitment, Ex. B to Reply Mem.

2

eight months of incarceration for the credit card fraud.[7] Agoro was apparently released from custody on or before December 1, 1992.[8] Agoro was subsequently convicted of failure to appear for sentencing and, on August 4, 1993, Agoro was sentenced to ten months of incarceration.[9] Agoro was apparently released from custody sometime before October 23, 1995.[10] On April 1, 1996, Agoro was convicted of violating the terms of his supervised release.[11] Agoro was sentenced to twelve months of incarceration and was released on December 31, 1996.[12]

## A. Agoro's Deportation Proceedings

On October 28, 1996, the former Immigration and Naturalization Service ("INS") initiated deportation proceedings against Agoro by issuing an Order to Show Cause.[13] The Order to Show Cause asserted that Agoro was

---

[7] *See* CR: 90-102B Judgment and Commitment.

[8] *See id.*

[9] *See* CR: 91-74L Judgment and Commitment.

[10] *See* 90 CR 00102-001 Judgement and Commitment, Ex. C to Reply Mem (indicating that Agoro violated the terms of his supervised release on October 23, 1995).

[11] *See* 90 CR 00102-001 Judgement and Commitment.

[12] *See id.*; Bureau of Prisons Record of Incarceration; Ex. D to Reply Mem.

[13] *See* OTSC.

3

deportable under former section 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA")[14] as an alien who had been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.[15] The INS subsequently filed an additional charge with the immigration court charging that Agoro was deportable as an aggravated felon under section 241(a)(2)(A)(iii) of the INA[16] based on his conviction for failure to appear for sentencing.[17]

On November 29, 2005, an immigration judge ("IJ") ordered that Agoro be deported from the United States.[18] On September 27, 2007, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision.[19] On January 15, 2009, Agoro filed an untimely motion to reopen his deportation proceeding, which the BIA denied on March 17, 2009.[20] On April 16, 2009, Agoro filed a motion to

---

[14] *See* 8 U.S.C. § 1227(a)(2)(A)(ii).

[15] *See* OTSC.

[16] *See* 8 U.S.C. § 1227(a)(2)(A)(iii).

[17] 11/29/05 Decision of the Immigration Judge, Ex. B to Opp. Mem.

[18] *See id.*

[19] *See* 9/27/07 BIA Decision and Order, Ex. C to Opp. Mem.

[20] *See* 3/17/09 BIA Decision and Order, Ex. D to Opp. Mem.

reconsider, which the BIA denied on May 12, 2009.[21]

On June 8, 2009, Agoro filed a petition with the Second Circuit for review of the BIA's May 12, 2009 decision.[22] He also filed a motion to stay his removal.[23] On July 23, 2009, the Second Circuit stayed Agoro's removal pending resolution of his petition.[24] On September 3, 2009, the Second Circuit dismissed Agoro's petition for review for lack of jurisdiction and lifted the stay of Agoro's removal.[25] On October 5, 2009, Agoro moved the Second Circuit to reconsider its September 3, 2009 decision.[26] The Second Circuit denied Agoro's motion on November 16, 2009.[27]

### B. Agoro's Detention by DHS

In November 2008, ICE encountered Agoro while he was detained for

---

[21] *See* 5/12/09 BIA Decision and Order, Ex. E to Opp. Mem.

[22] *See Agoro v. Holder*, No. 09-2425, Docket Sheet, Ex. F to Opp. Mem.

[23] *See id.*

[24] *See id.*

[25] *See id.*

[26] *See id.*

[27] *See id.*

a criminal offense at Riker's Island Correctional Facility ("Riker's Island").[28] Because Agoro had been subject to a deportation order since September 27, 2007 and had an outstanding Warrant of Removal, ICE took Agoro into custody on January 16, 2009, after he was released from Riker's Island.[29] ICE immediately began deportation proceedings against Agoro.[30] In March 2009, ICE received a travel document for Agoro from the Consulate General of Nigeria.[31] The travel document expired after sixty days.[32] However, ICE did not remove Agoro because Agoro's motion to reopen his deportation proceeding, followed by his motion to reconsider, were pending before the BIA.[33]

ICE arranged for Agoro to be removed on July 15, 2009, but had to cancel the plan on account of the ongoing proceedings in the Second Circuit.[34]

---

[28] *See* Declaration of Wavenly Boyd, Deportation Officer in Charge of Agoro's Case ("Boyd Decl.") ¶ 3, Ex. I to Opp. Mem.

[29] *See id.*

[30] *See id.* ¶ 5.

[31] *See* 3/10/09 Travel Document, Ex. H to Opp. Mem.

[32] *See* Boyd Decl. ¶ 5.

[33] *See id.*

[34] *See id.* ¶ 6.
ICE has an agreement with the Second Circuit, under which ICE "agreed to forbear from removing an alien whose motion for a stay is pending with

ICE received a second travel document from the Nigerian Consulate on August 5, 2009.[35] However, ICE was unable to remove Agoro because of the Second Circuit's July 23, 2009 stay order.[36]

On November 3, 2009, ICE brought Agoro to the Nigerian Consulate for the purpose of obtaining a new travel document.[37] During an interview, Agoro told the Consulate official that his motion to reconsider was pending before the Second Circuit.[38] The Nigerian Consulate refused to issue another travel document because the Nigerian government has a policy of not issuing travel documents to aliens involved in pending litigation in the United States.[39]

After the Second Circuit's November 16, 2009 denial of Agoro's motion to reconsider, ICE renewed its request to the Nigerian Consulate for a travel document for Agoro.[40] ICE believes the Nigerian Consulate will issue the

---

the Second Circuit in connection with a petition for review." *Id.*

[35] *See* 8/5/09 Travel Document, Ex. H to Opp. Mem.

[36] *See* Boyd Decl. ¶ 7.

[37] *See id.* at ¶ 9.

[38] *See id.*

[39] *See id.*

[40] *See id.* at ¶ 10.

travel document shortly because, other than the instant habeas petition, Agoro does not have any litigation pending in the United States.[41] Agoro claims that he fully cooperated with all of ICE's attempts to obtain travel documents and that it is unlikely the Nigerian Consulate will issue a travel document for him in the foreseeable future because "[a]t this time, . . . the country['s] condition is bad."[42]

## III. APPLICABLE LAW

### A. Petition for a Writ of Habeas Corpus

Section 2241 of title 28 of the United States Code authorizes a district court to issue a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." Habeas corpus proceedings are available as a forum for statutory and constitutional challenges to the detention of aliens who have been ordered removed[43] from this county.[44]

### B. Detention of Aliens Ordered Removed

On September 30, 1996, Congress enacted the Illegal Immigration

---

[41] *See id.* at ¶ 11.

[42] Pet. at 40-41.

[43] In 1996, Congress combined deportation and exclusion proceedings into a single removal proceeding. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104-208, § 304(a), 110 Stat. 3009-587, adding 8 U.S.C. § 1229a.

[44] *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

8

Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[45] Under the IIRIRA provisions codified in section 1231of title 8 of the United States Code, when an alien is ordered deported, the Attorney General has ninety days (the "removal period") in which to remove the alien.[46] The removal period begins on the latest of three events: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."[47] The removal period can be extended beyond ninety days if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."[48] The Attorney General must detain the alien during the removal period.[49]

---

[45] *See* Pub.L. 104-208, 110 Stat. 3009-546.

[46] *See* 8 U.S.C. § 1231(a)(1).

[47] *Id.* § 1231(a)(1)(B).

[48] *Id.* § 1231(a)(1)(C).

[49] *See id.* § 1231(a)(2).

9

In the event the alien is not removed during the removal period, section 1231(a)(6) of title 8 of the United States Code, authorizes post-removal-period detention of an alien when the alien is removable under section 1227 of title 8 of the United States Code. On its face, section 1231(a)(6) does not place any limits on the length of post-removal-period detention.[50] However, in order to avoid constitutional problems, the Supreme Court "read an implicit limitation into" section 1231(a)(6).[51] Under the Supreme Court's construction, section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States."[52] "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."[53] Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."[54]

"[F]or the sake of uniform administration in the federal courts," the

---

[50] *See id.*

[51] *Zadvydas*, 533 U.S. at 689.

[52] *Id.*

[53] *Id.*

[54] *Id.* at 699.

10

Supreme Court determined that six months of post-removal-period detention is presumptively reasonable.[55] After six months of post-removal-period detention, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[56]

## IV. DISCUSSION

### A. Agoro's Detention Is Governed by Section 1231 of Title 8 of the United States Code

Agoro asserts that his detention is governed by the Transition Period Custody Rules ("TPCR") set forth in section 303(b)(3) of the IIRIRA, rather than by section 1231.[57] Agoro argues that the provision in section 1231 requiring that the Attorney General detain the alien during the removal period is analogous to the mandatory detention provision in section 1226 of title 8 of the United States

---

[55] *Id.* at 701.

[56] *Id.*

[57] Although the IIRIRA was enacted on September 30, 1996, under section 303(b)(2) of the IIRIRA, the Attorney General had the option to defer certain provisions of the IIRIRA upon specified conditions. The Attorney General chose to defer the relevant provisions for two years. During that deferral period, the IIRIRA's Transition Period Custody Rules in section 303(b)(3) governed the custody and release of aliens in situations that would have been covered by the deferred provisions. *See* IIRIRA § 303(b)(2), (3).

Code.[58] Due to the Attorney General's decision to exercise the two-year deferral option contained in section 303(b)(2) of the IIRIRA, the mandatory detention provision in section 1226 did not become effective until October 9, 1998, at which time it applied prospectively only to aliens who were released after that date from incarceration for the offense that rendered the alien removable.[59] Accordingly, Agoro argues that the TPCR apply to him because he was released from custody for his convictions for credit card fraud and failure to appear for sentencing — the offenses that rendered him removable — prior to October 9, 1998.[60]

Agoro's argument fails because section 1231 is *not* analogous to section 1226. Section 1231's effective date and transition is governed by section 309 of the IIRIRA, not section 303.[61] Furthermore, section 303 makes clear that

---

[58] *See* Reply Mem. at 8.
Section 1226 requires the Attorney General to take certain criminal aliens into custody pending a decision on whether the alien is to be removed from the United States.

[59] *See Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y 2009) (concluding that the TPCR applied to petitioner because he was released from custody for the offenses that rendered him removable prior to October 9, 1998 notwithstanding his release from custody for offenses unrelated to his removal after October 9, 1998).

[60] *See* Reply Mem. at 7.

[61] *See Martinez-Vazquez v. Immigration and Naturalization Servs.*, 346 F.3d 903, 906 (9th Cir. 2003); *Zadvydas v. Underdown*, 185 F.3d 279, 286-87, n.7 (5th Cir. 1999, overruled on other grounds in *Zadvydas*, 533 U.S. at 702);

12

the TPCR do not apply to section 1231. Section 303(b)(2) states:

> If the Attorney General . . . notifies in writing the Committees on the Judiciary of the House of Representatives and the Senate that there is insufficient detention space and Immigration and Naturalization Service personnel available to carry out section 236(c) of the [INA], as amended by subsection (a), or the amendments made by section 440(c) of Public Law 104-132, the provisions in paragraph (3) [the TPCR] shall be in effect for [the deferral period], *instead of such section or such amendments.*[62]

In other words, the TPCR only apply in place of "section 236(c) of the [INA], as amended by subsection (a) [of section 303 of the IIRIRA], or the amendments made by section 440(c) of Public Law 104-132."[63] Section 1226 is the codification of section 236 of the INA — Apprehension and Detention of Aliens. Section 440(c) of Public Law 104-132 amends section 242 of the INA — Judicial Review of Orders of Removal. Accordingly, the TPCR do not apply to aliens, such as Agoro, who are detained under section 1231, the codification of section 241(a) of the INA — Detention and Removal of Aliens Ordered Removed.

### B. Agoro's Petition for a Writ of Habeas Corpus Is Denied

---

*Sivongxay v. Reno*, 56 F. Supp. 2d 1167, 1169-70 (W.D. Wash. 1999).

[62] IIRIRA § 303(b)(2) (emphasis added).

[63] *Id.*

13

Agoro argues that even if section 1231 applies to him, DHS can no longer detain him because both the section 1231(a)(1) removal period and the section 1231(a)(6) six months of post-removal-period detention have passed.[64] The Government asserts that the presumptively reasonable six months of post-removal-period detention have not expired.[65] Under section 1231(a)(1)(B)(ii), the removal period begins, "[i]f the removal order is judicially reviewed and a court orders a stay of the removal of the alien, [on] the date of the court's final order." The Government argues that because Agoro petitioned the Second Circuit to review the BIA's denial of his motion to reconsider its decision not to reopen his case, and the Second Circuit ordered a stay of his removal, Agoro's removal period began on September 3, 2009, when the Second Circuit dismissed Agoro's petition and vacated the stay order.[66] If this is correct, Agoro's removal period did not end until December 2, 2009 (ninety days later) and the presumptively reasonable six months of post-removal-period detention will not end until June 2, 2010.

---

[64] *See* Pet. at 30 ("Petitioner's 90-day statutory removal period and (6) month preemptively [sic] reasonable period for continued removal efforts have both expired . . . ."); Reply Mem. at 3-5.

[65] *See* Opp. Mem. at 6-7.

[66] *See id.* at 5.

14

Agoro asserts that section 1231(a)(1)(B)(ii) is inapplicable because it only applies when the *removal order* is judicially reviewed. Here, the Second Circuit reviewed the BIA's denial of reconsideration, not the removal order.[67] Under section 1231(a)(1)(B)(iii), the removal period begins "[i]f the alien is detained or confined (except under an immigration process), [on] the date the alien is released from detention or confinement." If Agoro's argument is correct, because Agoro was detained at Riker's Island for a criminal offense, section 1231(a)(1)(B)(iii) applies and Agoro's removal period began on January 16, 2009 — when Agoro was released from Riker's Island into ICE's custody.[68] Accordingly, Agoro's removal period expired ninety days later on April 16, 2009 and the six months of presumptively reasonable post-removal-period detention

---

[67] *See* 9/3/09 *Agoro v. Holder* Second Circuit Order, Ex. G to Opp. Mem. ("[I]n reviewing the denial of a motion for reconsideration, the Court may only consider the denial of reconsideration, not the underlying proceedings . . . .").

[68] Agoro fails to make clear whether he believes subsection (i) or subsection (iii) of section 1231(a)(1)(B) applies. Agoro asserts that section 1231(a)(1)(B)(i) applies to determine the start of his removal period. *See* Reply Mem. at 5 ("Here, Subsection (i) of 8 U.S.C. §[]1231(a)(1)(B) governs. The [ninety]-day removal period began to run on September 27, 2009 [sic — the removal order was final on *September 27, 2007*], the date Mr. Agoro's removal order became administratively final."). However, when calculating the removal period, Agoro appears to apply section 1231(a)(1)(B)(iii) as he begins the ninety-day calculation from the day ICE took him into custody, January 16, 2009. *See id.* ("The removal period expired on April 16, 2009.").

15

ended on October 16, 2009.

I need not decide when Agoro's removal period began.[69] Even assuming that DHS has detained Agoro for longer than six months after the expiration of his removal-period, *Zadvydas* makes clear that the "[six]-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."[70] *Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien.[71]

Agoro has failed to prove that there is no significant likelihood that he will be removed in the reasonably foreseeable future. Given that ICE has twice procured travel documents for Agoro, there is a significant likelihood that ICE will be able to procure another travel document for Agoro when he no longer has

---

[69] There are three possibilities: (1) September 27, 2007 — the date Agoro's removal order became administratively final, (2) January 16, 2009 — the date Agoro was released from Riker's Island into ICE's custody, or (3) September 3, 2009 — the date the Second Circuit dismissed Agoro's petition and vacated the stay order.

[70] 533 U.S. at 701.

[71] *See id.*

16

litigation pending in United States courts. Even if Agoro files additional claims in an effort to prolong the removal process, his removal will still be considered reasonably foreseeable because any resulting delay will be caused by Agoro's own actions.[72] Accordingly, Agoro's Petition must be denied.

V. CONCLUSION

For the foregoing reasons, Agoro's Petition is denied. The Clerk of the Court is directed to close this motion (Docket No. 2) and this case (09 Civ.

---

[72] *See, e.g., Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) (denying petitioner's request for a writ of habeas corpus when petitioner's continued detention "occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order"); *Abimbola v. Ridge*, No. 04 Civ. 856, 2005 WL 588769, at *2-3 (D. Conn. Mar. 7, 2005) (denying petitioner's request for a writ of habeas corpus when, "but for [petitioner's] seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals, [petitioner] could have been speedily deported to Nigeria some time ago"); *Guang v. Immigration and Naturalization Servs.*, No. Civ.A. CV025916, 2005 WL 465436, at *2 (E.D.N.Y. Feb. 28, 2005) (denying petitioner's request for a writ of habeas corpus when, "petitioner's own actions — not the government's inability to deport him — have resulted in his continued detention during the past five years, during which time he has filed motions and/or appeals with the administrative courts, Second Circuit, and district court, with corresponding requests for stays of removal"); *Guner v. Reno*, No. 00 Civ. 8802, 2001 WL 940576, at * 2 (S.D.N.Y. Aug. 20, 2001) (denying petitioner's request for a writ for habeas corpus because "petitioner has challenged the INS's decision to deport him and to deny him relief under § 212(c). It is these efforts that have prevented INS from removing him, and there has been no showing that the Government will be unable to remove petitioner within a reasonable period of time after the completion of these proceedings.").

8111).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          January 4, 2010

## - Appearances -

**For Petitioner:**

Stephanie M. Carvlin, Esq.
111 Broadway, Suite 701
New York, NY 10006
(212) 748-1636

**For Respondents:**

Sue Chen
Special Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2200